**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. 22-cv-2069 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| SPIRIT AIRLINES, INC., EDWARD M. | : **SECURITIES EXCHANGE ACT OF** |
| CHRISTIE, III, CARLTON D. DONAWAY, | : **1934** |
| MARK B. DUNKERLEY, H. MCINTYRE | : |
| GARDNER, ROBERT D. JOHNSON, | : **JURY TRIAL DEMANDED** |
| BARCLAY G. JONES III, CHRISTINE P. | : |
| RICHARDS, MYRNA M. SOTO, DAWN M. | : |
| ZIER, TOP GUN ACQUISITION CORP., | : |
| FRONTIER GROUP HOLDINGS, INC., | : |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Spirit Airlines, Inc., ("Spirit Airlines or the "Company") the members Spirit Airlines' board of directors (the "Board" or the "Individual Defendants"), and Frontier Group Holdings, Inc. and affiliates ("Frontier" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Spirit Airlines and Frontier.

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on March 11, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Top Gun Acquisition Corp., a wholly owned subsidiary of Frontier ("Merger Sub"), will merge with and into Spirit Airlines with Spirit Airlines surviving as a wholly owned subsidiary of Frontier (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Spirit Airlines stockholder will receive (i) $2.13 in cash, and (ii) 1.912 shares of Frontier common stock (the "Merger Consideration"). Following the consummation of the Proposed Transaction, Company shareholders will own 48.5% of the combined company and Frontier shareholders will own 51.5% of the combined company.

3. As discussed below, Defendants have asked Spirit Airlines' stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisors, Barclays Capital Inc. ("Barclays") and Morgan Stanley & Co. LLC ("Morgan Stanley" and with Barclays, the "Financial Advisors") in support of their fairness opinions.

4. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Spirit Airlines' stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the closing of the Proposed Transaction will take place in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Spirit Airlines stocks and has held such stocks since prior to the wrongs complained of herein.

10. Individual Defendant Edward M. Christie, III has served as a member of the Board since January 2018 and is the Company's President and Chief Executive Officer.

11. Individual Defendant Carlton D. Donaway has served as a member of the Board since January 2013.

3

12. Individual Defendant Mark B. Dunkerley has served as a member of the Board since September 2019.

13. Individual Defendant H. McIntyre Gardner has served as a member of the Board since July 2010.

14. Individual Defendant Robert D. Johnson has served as a member of the Board since July 2010.

15. Individual Defendant Barclay G. Jones III has served as a member of the Board since 2006.

16. Individual Defendant Christine P. Richards has served as a member of the Board since September 2019.

17. Individual Defendant Myrna M. Soto has served as a member of the Board since June 2020.

18. Individual Defendant Dawn Z. Zier has served as a member of the Board since June 2015.

19. Defendant Spirit Airlines is a Delaware corporation and maintains its principal offices at 2800 Executive Way, Miramar, Florida 33025. The Company's stock trades on the New York Stock Exchange under the symbol "SAVE."

20. Defendant Frontier is a Delaware corporation and maintains its principal offices at 4545 Airport Way, Denver, Colorado 80239.

21. Defendant Merger Sub is a Delaware corporation and is a wholly owned subsidiary of Frontier. Merger Sub was formed and organized for the sole purpose of entering into the Merger Agreement.

22. The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

23. The defendants identified in paragraphs 10-21 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.   The Proposed Transaction**

24. Spirit Airlines provides airline services. It serves 85 destinations in 16 countries in the United States, Latin America, and the Caribbean. As of December 31, 2021, the Company had a fleet of 173 Airbus single-aisle aircraft. It sells tickets through its call centers and airport ticket counters, as well as online through spirit.com; and through various third parties, including online, traditional travel agents, and electronic global distribution systems. The Company was formerly known as Clippert Trucking Company and changed its name to Spirit Airlines, Inc. in 1992. Spirit Airline was founded in 1964 and is headquartered in Miramar, Florida.

25. On February 7, 2022, the Company and Frontier jointly announced the Proposed Transaction:

> DENVER, Colo. and MIRAMAR, Fla., Feb. 07, 2022 (GLOBE NEWSWIRE) -- Spirit Airlines, Inc. ("Spirit") (NYSE: SAVE) and Frontier Group Holdings, Inc. ("Frontier") (NASDAQ: ULCC), parent company of Frontier Airlines, Inc., today announced a definitive merger agreement under which the companies will combine, creating America's most competitive ultra-low fare airline.
>
> Together, Frontier and Spirit expect to change the industry for the benefit of consumers, bringing more ultra-low fares to more travelers in more destinations across the United States, Latin America and the Caribbean, including major cities as well as underserved communities. The stronger financial profile of the combined company will empower it to accelerate investment in innovation and growth and compete even more aggressively, especially against the dominant "Big Four"[1] airlines, among others.

William A. Franke, the Chair of Frontier's Board of Directors and the managing partner of Indigo Partners, Frontier's majority shareholder, noted that Indigo has a long history with both Spirit and Frontier, and is proud to partner with them in creating a disruptive airline. "We worked jointly with the Board of Directors and senior management team across both carriers to arrive at a combination of two complementary businesses that together will create America's most competitive ultra-low fare airline for the benefit of consumers."

"We are thrilled to join forces with Frontier to further democratize air travel," said Ted Christie, President and CEO of Spirit. "This transaction is centered around creating an aggressive ultra-low fare competitor to serve our Guests even better, expand career opportunities for our Team Members and increase competitive pressure, resulting in more consumer-friendly fares for the flying public. We look forward to uniting our talented teams to shake up the airline industry while also continuing our commitment to excellent Guest service."

"This combination is all about growth, opportunities and creating value for everyone – from our Guests to our Team Members to the flying public at large," said Mac Gardner, Chairman of the Board of Spirit. "We're a perfect fit – our businesses share similar values, including our longstanding commitment to affordable travel. At the same time, we have complementary footprints and fleets, including one of the youngest and greenest fleets worldwide. Together, we will be even more competitive for our Guests and our Team Members, and we are confident we can deliver on the benefits of this combination to consumers."

"Together, Frontier and Spirit will be America's Greenest Airline and deliver more ultra-low fares to more people in more places," said Barry Biffle, President and CEO of Frontier. "I couldn't be more excited for our team members, customers, partners, the communities we serve and our shareholders."

**Consumers Win With More Ultra-Low Fares to More Places**

The combined airline is expected to:

- Deliver $1 billion in annual consumer savings.

- Offer more than 1,000 daily flights to over 145 destinations in 19 countries, across complementary networks.

- Expand with more than 350 aircraft on order to deliver more ultra-low fares.

- Increase access to ultra-low fares by adding new routes to underserved communities across the United States, Latin America and the Caribbean.

- Deliver even more reliable service through a variety of operational efficiencies.

- Expand frequent flyer and membership offerings.

**Team Members Win With Expanded Opportunities and Increased Stability**

- By 2026 Spirit and Frontier expect to add 10,000 direct jobs and thousands of additional jobs at the companies' business partners.

- Given the growth of the combined company, it is expected that all current team members will have an opportunity to be a part of the combined airline.

- Team Members of the combined airline will have better career opportunities and more stability as part of the most competitive ultra-low fare airline in the United States.

**Sustainability Wins With America's Greenest Airline**

Frontier and Spirit will be America's Greenest Airline, providing nationwide access to sustainable and affordable air travel. The combined airline will have the youngest, most modern and fuel-efficient fleet in the United States, featuring the largest fleet of A320neo family aircraft of any airline in the country. The combined airline is expected to achieve over 105 seat miles per gallon by 2025.

**Shareholders Win With Superior Value Creation**

The combination of Spirit and Frontier is expected to deliver enhanced value to shareholders of both companies.

- On a combined basis, the company would have annual revenues of approximately $5.3 billion based on 2021 results.

- Once combined, Frontier and Spirit expect to deliver annual run-rate operating synergies of $500 million once full integration is completed, which will be primarily driven by scale efficiencies and procurement savings across the enterprise with approximately $400 million in one-time costs.

7

- The combined airline is expected to have a strengthened financial profile, with a cash balance of approximately $2.4[2] billion as of the end of 2021 on a combined basis.

- Under the terms of the merger agreement, which has been unanimously approved by the boards of directors of both companies, Spirit equity holders will receive 1.9126 shares of Frontier plus $2.13 in cash for each existing Spirit share they own. This implies a value of $25.83 per Spirit share at Frontier's closing stock price of $12.39 on February 4, 2022, representing a premium of 19% over the February 4, 2022, closing price of Spirit, and a 26% premium based on the 30 trading-day volume-weighted average prices of Frontier and Spirit. The transaction values Spirit at a fully diluted equity value of $2.9 billion, and a transaction value of $6.6 billion when accounting for the assumption of net debt and operating lease liabilities.

Upon closing of the transaction, existing Frontier equity holders will own approximately 51.5% and existing Spirit equity holders will own approximately 48.5% of the combined airline, on a fully diluted basis, providing both Frontier and Spirit equity holders with substantial upside potential.

**Bringing Our Airlines Together – Governance and Timing to Completion**

The Board of Directors for the new airline will be comprised of 12 directors (including the CEO), seven of whom will be named by Frontier and five of whom will be named by Spirit. Mr. Franke will be Chairman of the Board of the combined company.

The merger is expected to close in the second half of 2022, subject to satisfaction of customary closing conditions, including completion of the regulatory review process and approval by Spirit stockholders. Frontier's controlling stockholder has approved the transaction and related issuance of shares of Frontier common stock upon signing of the merger agreement. The combined company's management team, branding and headquarters will be determined by a committee led by Mr. Franke prior to close.

**Merger Conference Call and Transaction Website Details**

Frontier and Spirit will conduct a live conference call and webcast to discuss the transaction at 6:30 AM MT / 8:30 AM ET today. To listen to the live call, please dial (800) 459-5346 or (203) 518-9544 and enter the participant code 4789568.

> A live webcast of the conference call will be accessible through https://webinars.on24.com/messagebank/frontierspirit. The accompanying presentation slides will be available on both the Spirit website (https://ir.spirit.com) and the Frontier website (https://ir.flyfrontier.com), as well as www.EvenMoreUltraLowFares.com, a joint website dedicated to the transaction, at 6:15 AM MT / 8:15 AM ET. The webcast will also be available on the Spirit website (https://ir.spirit.com), the Frontier website (https://ir.flyfrontier.com) and www.EvenMoreUltraLowFares.com.
>
> A replay of the call will be available until February 10, 2022, by dialing (888) 274-8331 or (402) 220-7332.
>
> **Spirit and Frontier Fourth Quarter and Full Year 2021 Earnings Results**
>
> In separate press releases today, Frontier and Spirit are also announcing earnings results for the fourth quarter and full year 2021. In light of today's proposed transaction, Spirit and Frontier have canceled their previously announced calls for Wednesday, February 9, 2022, at 10:00 AM ET and 4:30 PM ET, respectively.
>
> **Advisors**
>
> Citigroup Global Markets Inc. is serving as financial advisor and Latham & Watkins, LLP is serving as legal advisor to Frontier. Barclays and Morgan Stanley & Co. LLC are serving as financial advisors and Debevoise & Plimpton LLP is serving as legal advisor to Spirit.

\* \* \*

26. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Spirit Airlines' stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.** **The Materially Incomplete and Misleading Registration Statement**

27. On March 11, 2022, Spirit Airlines and Frontier jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement

9

was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

28.     The Registration Statement fails to provide material information concerning financial projections by management and relied upon by the Financial Advisors in its analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading. The Registration Statement indicates that in connection with the rendering of its fairness opinion, that the management of Frontier and Spirit Airlines prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and the Financial Advisors with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that management provided to the Board and the Financial Advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

29. For the Company Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2022 through 2026: Adjusted EBITDAR, Adjusted Net Income, and Unlevered Free Cash Flows, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

30. For the Frontier Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2022 through 2026: Adjusted EBITDAR, Adjusted Net Income, and Unlevered Free Cash Flows, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

31. For the Synergy Forecasts, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metric for fiscal years 2023 through 2026: Synergies (EBIT Contribution), but fails to provide line items used to calculate this metric or a reconciliation of this non-GAAP metric to its most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

32. When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or

released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

33. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

34. Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses for Spirit Airlines*

35. With respect to Barclays' *Selected Comparable Company Analysis*, the Registration Statement fails to disclose the metrics and the multiples of the selected comparable companies selected by Barclays for the analysis.

36. With respect to Barclays' *Discounted Cash Flow Analysis – Spirit Standalone Valuation*, the Registration Statement fails to disclose: (i) the range of illustrative terminal value of the Company as of December 31, 2026; (ii) line items used to calculate Spirit Airlines' projected after-tax unlevered free cash flows; (iii) the inputs and assumptions underlying the use of the range of terminal value multiples of 5.5x to 7.5x; (iv) the inputs and assumptions underlying the discount

rates ranging from 9.0% to 11.0%; (v) the Company's weighted average cost of capital; (vi) the estimated total debt of the Company as of December 31, 2021; (vii) cash as of December 31, 2021; and (viii) the amount of fully diluted number of shares of Company common stock.

37. With respect to Barclays' *Discounted Cash Flow Analysis – Frontier Standalone Valuation*, the Registration Statement fails to disclose: (i) the range of illustrative terminal value of Frontier as of December 31, 2026; (ii) line items used to calculate Frontier's projected after-tax unlevered free cash flows; (iii) the inputs and assumptions underlying the use of the range of terminal value multiples of 5.5x to 7.5x; (iv) the inputs and assumptions underlying the discount rates ranging from 9.0% to 11.0%; (v) Frontier's weighted average cost of capital; (vi) the estimated total debt of Frontier as of December 31, 2021; (vii) cash as of December 31, 2021; and (viii) the amount of fully diluted number of shares of Frontier common stock.

38. With respect to Barclays' *Research Analyst Price Targets* analysis, the Registration Statement fails to disclose: (i) the equity research analysts reviewed; and (ii) the price targets published by each research analyst.

39. With respect to Morgan Stanley's *Discounted Cash Flow Analysis – Spirit*, the Registration Statement fails to disclose: (i) the range of terminal values of the Company as of December 31, 2026; (ii) line items used to calculate Spirit Airlines' projected after-tax unlevered free cash flows; (iii) the inputs and assumptions underlying the use of the range of Adj. EV / EBITDAR multiples of 5.5x to 7.0x; (iv) the inputs and assumptions underlying the discount rates ranging from 9.8% to 11.4%; (v) the Company's weighted average cost of capital; and (vi) the amount of fully diluted number of shares of Company common stock as of February 4, 2022.

40. With respect to Morgan Stanley's *Discounted Cash Flow Analysis – Frontier*, the Registration Statement fails to disclose: (i) the range of terminal values of Frontier as of December

31, 2026; (ii) line items used to calculate Frontier's projected after-tax unlevered free cash flows; (iii) the inputs and assumptions underlying the use of the range of Adj. EV / EBITDAR multiples of 5.5x to 7.0x; (iv) the inputs and assumptions underlying the discount rates ranging from 9.5% to 11.2%; (v) Frontier's weighted average cost of capital; and (vi) the amount of fully diluted number of shares of Frontier common stock as of February 4, 2022.

41. With respect to Morgan Stanley's *Discounted Equity Value Analysis – Spirit*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying the use of the range of Adj. EV / EBITDAR multiples of 5.0x to 6.5x and the range of P / E multiples of 9.0x to 11.0x; (ii) the inputs and assumptions underlying the use of the discount range of 12.0%; and (iii) Spirit Airlines' then-current cost of equity.

42. With respect to Morgan Stanley's *Discounted Equity Value Analysis – Frontier*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying the use of the range of Adj. EV / EBITDAR multiples of 5.0x to 6.5x and the range of P / E multiples of 9.0x to 11.0x; (ii) the inputs and assumptions underlying the use of the discount range of 11.1%; and (iii) Frontier's then-current cost of equity.

43. With respect to Morgan Stanley's *Discounted Analyst Price Targets*, analysis, the Registration Statement fails to disclose: (i) the future public market trading price targets for each of Spirit Airlines common stock and Frontier common stock; (ii) the equity research analysts selected; and (iii) the inputs and assumptions underlying the use of the discount rates of 12.0% for Spirit Airlines and 11% for Frontier.

44. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder

meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

45. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

47. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

48. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were

therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

49. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

50. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

51. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52. The Individual Defendants acted as controlling persons of Spirit Airlines within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Spirit Airlines, and participation in and/or awareness of the Company's operations

and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Spirit Airlines, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Spirit Airlines, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

55. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.	Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 14, 2022								**MELWANI & CHAN LLP**

By:	*/s/ Gloria Kui Melwani*
Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*